**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CAO GROUP, INC., | |
| Plaintiff, | Case No. |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," | JURY TRIAL DEMANDED |
| Defendants. | |

**VERIFIED COMPLAINT**

Plaintiff CAO Group, Inc. ("Plaintiff" or "CAO") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer

shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## INTRODUCTION

3.      Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

## THE PARTIES

4.      Plaintiff, CAO Group, Inc., is a Utah corporation with its principal place of business at ████████████████████████████ and is the owner of the Patent asserted in this action.

5.      Plaintiff is the owner of all right, title, and interest in U.S. Patent No. ████████ ████████████ (herein after "Plaintiff's Patent" or "Asserted Patent"). True and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**, respectively.

## PLAINTIFF'S ASSERTED PATENT

6.      The Plaintiff's Patent is titled "████████████████████████████" and issued on ████████████████████████████████████. The Plaintiff's Patent ultimately claims priority to an application filed ████████████.

7.      ████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████

8.      ████████████ is the other named inventor on Plaintiff's Patent. A true and correct copy of Plaintiff's Patent is attached as **Exhibit 1**.

3

9. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

10. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████.

11. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

12. ██████ ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

4

13. █████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████
██████████████████

14. ████████████████████████ :

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████
██████████████████

15. The inventive subject matter of Plaintiff's Patent is characterized by ████
████████████████████████████████████████████████
███████████████████████████

██ ██████████████████████
████████████████████████████████████████████
███████████████████████████████
████████████████████████████████████████████
██████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████



16.      By virtue of the USPTO's issuance of Plaintiff's Patent, each of the above claims were shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

17.      Plaintiff was founded by █████████████████████ following ████████ completion of Ph.D. studies in Materials Science and Engineering from the University of Utah. Before founding ████████ also served as coordinator of material science at Clinical Research Associated, where examined dental materials, such as glass ionomers and their fluoride release, the properties of composites and adhesives, and dental equipment, and serving as a staff engineer at Fairchild Semiconductor, respectively.

18.      Over the course of years of research and development, CAO has invented and patented ground-breaking advancements in the dental, oral health, and LED lighting fields, among others. CAO has publicly disclosed its novel inventions in more than 192 issued Patent and/or published patent applications world-wide.

19.      For example, Dr. Cao invented ████████████████████

████████████████████████████████████████

████████████████████████████████████████

▌

████████████████████████ .

20.     CAO also developed and patented technology underlying ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████

21.     In 2006, CAO moved into a 60,000 square-foot facility in West Jordan, Utah, which houses its Research and Development, Engineering, Manufacturing, Global Logistics, Customer Support, Marketing and Sales teams.

22.     CAO created advanced ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ . CAO's efforts in this field resulted in the United States Patent and Trademark Office ("USPTO") granting CAO numerous Patent related to such technologies.

23.     In 2010, CAO launched its ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

24.     That same year, CAO entered into an exclusive relationship with █████████

████████████████████████████████████████████████████████████

██████████████████████████████████

7

25.     On information and belief, CAO's ███████████████████

████████████████████████████████████████

26.     CAO's ████████████████████████████████

██████████████████████<mark>.</mark>

27.     Plaintiff lists Plaintiff's Patent on the packaging of all of Plaintiff's Products and

displays the URL to ████████████████████████████████████

████████████████████████████████████████

████████████████



███████████████████████

28.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## I.     DEFENDANTS' UNLAWFUL CONDUCT

29.     The success of the Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

30.     On information and belief, the Seller Aliases target consumers in this Judicial District and throughout the United States.

31.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

32.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores

operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patent, and none of the Defendants are authorized retailers of Plaintiff's Products.

33.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

34.     E- commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

35.     Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated. For example, Defendant 1's seller alias is ███████ and according to its seller page information, ███████ listed business name is ███████████████████████████ is also a registered trademark owned by Defendant 2, ████████████████████████████. The fact that Defendant 1 is actively using a trademark owned by Defendant 2 strongly indicates

10

coordination and common control between the two. Even if the entities are not formally identical, the overlap in trademark ownership and use makes clear that Defendants 1 and 2 are at minimum closely related and likely acting in concert as part of a single infringing enterprise.

36.     E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

37.     Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

38.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patent in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

39.     Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patent in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – PLAINTIFF'S PATENT

40.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

42.     As shown in the claim charts attached as **Exhibit 3**, the products being sold by Defendants infringe at least Claim 1 of Plaintiff's Patent. The claim chart of **Exhibit 3** is illustrative only and is made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of Plaintiff's Patent.

43.     Specifically, Defendants have infringed and continue to infringe each and every claim of Plaintiff's Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

44.     One active ingredient common to all of the Defendants is that all of them include a



47.     Defendants have profited by their infringement of Plaintiff's Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

48.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe Plaintiff's Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

49.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

50.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of Plaintiff's Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

51.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION (15 U.S.C. §1125(a))

52.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

53.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

54.     Despite Plaintiff having valid and enforceable Patent, which were embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products that infringe upon Plaintiff's Patent. *See* **Exhibit 2** and **Exhibit 3**. These acts of infringement have prevented Plaintiff from generating and expanding its market share in what should have been an exclusive field.

55.     By selling products which infringe upon Plaintiff's Patent, Defendants are competing for sales with Plaintiff and Plaintiff's Products with products that Defendants are prohibited from selling under U.S. Patent law.

56.     By selling products which infringe upon Plaintiff's Patent, Defendants are competing for sales against Plaintiff in an unfair and unlawful manner.

57.     Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff as owner of the '377 Patent, allowing Defendants to profit from the goodwill, time, research, and development of the

invention as embodied in Plaintiff's Patent and in Plaintiff's embodying Products, while causing Plaintiff irreparable and immeasurable injury.

58.     On information and belief, Defendants have intentionally and blatantly infringed upon Plaintiff's Patent by selling Unauthorized Products to take unfair advantage of the enormous time, effort, and expense spent in connection with the '377 Patent and Plaintiff's efforts to cultivate a successful market for the invention embodied in Plaintiff's Patent and in Plaintiff's Products in online marketplaces.

59.     On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

60.     On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

61.     Defendants have engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud customers and evade legal and financial responsibilities.

62.     Specifically, Defendants have been observed engaging in the following unlawful activities:

>     a.  Exploitation of Marketplace Accounts:  Defendants systematically divert funds from marketplace accounts into personal or untraceable accounts, thereby unlawfully extracting financial resources from the marketplace.

b.  Unlawful Storefront Closure:  Upon being detected or facing financial scrutiny, Defendants promptly close their storefronts to avoid further investigation or legal consequences.

c.  Reopening Under New Entities:  after closing the storefronts, Defendants frequently reopen new business entities or storefronts under different names, thereby circumventing legal and financial accountability and continuing their infringing activities.

63.     Collectively, these actions constitute unfair competition as Defendants mislead consumers, undermine fair market practices, and harm both the integrity of the marketplace and legitimate competitors.

64.     Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' sale and/or offer of sale of products which infringe Plaintiff's Patent, constitutes unfair competition.

65.     Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

66.     Plaintiff's spent substantial time, money, and resources in development of the invention embodied in Plaintiff's Patent.

67.     Plaintiff's Patent consist of a unique chemical makeup which greatly improves upon teeth whitening technology.

68.     Plaintiff also spent substantial time, money, and resources in the development of Plaintiff's Products, including selling Plaintiff's Products directly to consumers and through a distributor.

69. Defendants traded upon Plaintiff's good will, reputation, research, and development by selling products which infringed upon Plaintiff's Patent.

70. Defendants, by selling Unauthorized Products, eroded Plaintiff's market share in the dental and oral hygiene markets.

71. Unauthorized Products include the unique chemical components disclosed in Plaintiff's Patent.

72. Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patent and by selling those products they were eroding Plaintiff's market share and trading upon its good will, reputation, research, and development.

73. Defendants, by offering for sale and selling Unauthorized Products, improved their own good will and market share by trading upon the good will, reputation, research, and development of Plaintiff.

74. On information and belief, Defendants have sold Unauthorized Products, further eroding Plaintiff's market share and trading upon its good will, reputation, research, and development of Plaintiff.

75. Plaintiff has never received any relief for the erosion to its market share or any compensation from Defendants for their use of Plaintiff's good will, reputation, research, and development.

76. Defendants have been unjustly enriched because they have denied Plaintiff access to customers it would have otherwise had by participating in what should have been Plaintiff's exclusive market by selling products directly to consumers, products which infringed Plaintiff's Patent, and competing against Plaintiff's in the dental and oral hygiene markets.

**PRAYER FOR RELIEF**

17

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

   b.  Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2)      Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3)      That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4)      That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5)      That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6)      That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7)      A finding that this case is exceptional under 35 U.S.C. § 285.

8)      A finding that Defendants engaged in unfair competition under Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a).

9)      That Plaintiff be awarded its reasonable attorneys' fees and costs.

10)     Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 13, 2025                        Respectfully submitted,

                                               /s/ Nicholas S. Lee
                                               Nicholas S. Lee
                                               Nickles72@gmail.com
                                               1823 Turtle Bay Road
                                               Vernon Hills, IL 60061
                                               T: (773) 732-8244

                                               *Counsel for Plaintiff, CAO Group, Inc.*

19

## **VERIFICATION**

I, Dr. Denson Cao, hereby certify as follows:

1.      I am the founder and Chief Executive Officer for CAO Group, Inc. As such, I am authorized to make this Verification on CAO Group, Inc.'s behalf.

2.      I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in West Jordan, Utah on October 13, 2025.

Dr. Denson Cao
CEO
CAO Group, Inc.